# EXHIBIT 19

July 28, 2022

Avara US Holdings LLC
Avara International Holdings Ltd.
c/o Avara Pharmaceutical Services, Inc.
3300 Marshall Avenue
Norman, OK 73072
Attention:   Anup Gupta, Chief Financial Officer

     Re:  <u>Proposed Terms of Forbearance Agreement and Draft Receivership Complaint</u>

Ladies and Gentlemen:

  Reference is made to the Amended and Restated Credit Agreement, dated as of June 9, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Credit Agreement</u>"), among Avara Pharma Services Ltd., Avara Holdings Ltd. (the "<u>Company</u>"), the Borrowers and other Loan Parties from time to time party thereto, the Lenders from time to time party thereto and JPMorgan Chase Bank, N.A., as Administrative Agent (in such capacity, the "<u>Administrative Agent</u>").  Capitalized terms used but not defined herein (including in <u>Exhibit A</u> hereto) are used with the meanings assigned to them in the Credit Agreement.

  As you are aware, multiple Events of Default have occurred and are continuing under the Credit Agreement, including pursuant to Sections 7.01(a) and (b) of the Credit Agreement as a result of the Borrowers' failure to repay all principal, interest, fees and other amounts payable under the Credit Agreement and the other Loan Documents on the Maturity Date.

  We have been reasonable and supportive over the years in our relationship with you, but our patience has reached its limit.  The Obligations under the Credit Agreement are now more than seven months past the Maturity Date and you have provided no indication about how or when the Obligations will be repaid.  We ask that you review the proposed forbearance agreement terms (the "<u>Proposed Terms</u>") set forth on <u>Exhibit A</u> to this letter, which remain subject to execution of definitive documentation.  Among other items, the Proposed Terms contemplate the immediate commencement of a dual-track refinancing and sale process with specific milestones.  **To be clear, the Proposed Terms are final and nonnegotiable, and we request a response by no later than August 8, 2022, at 5:00 p.m. (prevailing Eastern Time).**

  We strongly encourage you to accept the Proposed Terms and respond with the urgency this situation demands.  We believe our proposal provides the only feasible path to preserve and maximize the value of the Company consistent with the directors' and officers' fiduciary duties.  **Should you fail to provide a timely response stating unqualified acceptance of the Proposed Terms by the foregoing deadline, we will file the complaint attached to this letter as <u>Exhibit B</u>, which seeks, among other things, to appoint a receiver under Okla. Stat. tit. 12, § 1551.**

  Please contact us if you have any questions with respect to the foregoing.  The Administrative Agent and Lenders reserve all rights to exercise remedies, and nothing herein shall constitute a forbearance, consent, release, waiver, amendment, or other modification with respect to any provision of the Credit Agreement or other Loan Documents.  All previous reservations of rights remain in full force and effect.

US-DOCS\133172135.7

Very truly yours,

JPMORGAN CHASE BANK, N.A., as Administrative Agent

By: *Matthew H. Massie*
Name: Matthew H. Massie
Title: Managing Director

cc: Tobin, Carberry, O'Malley, Riley & Selinger, P.C.
43 Broad Street
New London, Connecticut 06320
Attention: Joseph J. Selinger, Esq.

and

L. M. Levie
Chairman
1 Harbor Point Road 600
Stamford, Connecticut 06902

**NOTICE TO SERVICEMEMBERS**

The following persons may be entitled to certain legal rights and protections, including protection from foreclosure, pursuant to the Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-596), as amended, and possibly other similar state statutes:

- Any individual borrower, guarantor, collateral pledgor or property owner who is, or recently was, a Servicemember on active duty or active service;
- Any business entity, if a Servicemember who is, or recently was, on active duty or active service, is personally liable to Chase in a written agreement for its obligations.

Eligible service may include the following:

- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard;
- Active service with the National Guard;
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration;
- Active service as a commissioned officer of the Public Health Service;
- Service with the forces of a nation with which the United States is allied in the prosecution of a war or military action; or
- Service with the National Guard or a state militia under a state call to duty.

Eligible service also includes any period during which a Servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause.

If you or any of the persons described above is such a Servicemember, you should contact Chase at 1-877-344-3080, Monday through Friday, 8:00 a.m. to 7:00 p.m. Central Time.

**Exhibit A**

Proposed Forbearance Agreement Terms

| | |
|---|---|
| Forbearance Closing Date | No later than August 18, 2022 (the date on which the Forbearance Agreement is executed, the "Closing") |
| Forbearance Length: | 120 days after the Closing, subject to earlier termination upon breach of any milestone or other covenant set forth in the Forbearance Agreement |
| Rate: | ABR + 4.5% (the existing spread and default rate under the Credit Agreement) |
| Past Dues: | Payment in full in cash of past due interest under the Credit Agreement at Closing |
| Expenses: | Payment in full in cash of all accrued legal expenses at Closing plus $300,000 to fund an expense reserve |
| Term Loan Payment: | $1,500,000 paydown of Term Loans at Closing[1] |
| Budget | Weekly delivery of 13-week budget in form and substance acceptable to Administrative Agent (the "Budget") |
| Budget Testing and Reporting: | Weekly reporting and variance testing against the Budget in form and substance acceptable to Administrative Agent |
| Update Calls: | Weekly update calls with the financial advisor, outside the presence of Company personnel if requested by Administrative Agent |
| Use of Cash: | Execute control agreements with Administrative Agent; use of cash to be determined by Budget |
| Milestones: | Dual-track refinancing and sale process with the following milestones:<br><br>Week 1:   Hire financial advisor from a list of advisors acceptable to Administrative Agent<br>Week 4:   Establish virtual data room and initial Budget<br>Week 5:   Refinancing term sheet and sale teaser; launch processes<br>Week 7:   Initial proposals due<br>Week 8:   Mutually agreed alternative for closing<br>Week 12: Execute new credit agreement or purchase and sale agreement<br>Week 16: Closing and Credit Agreement payoff |

---

[1] Approximately equal to twelve months of missed Term Loan principal payments during the default and forbearance periods

**Exhibit B**

Receivership Complaint

*Draft*

# IN THE DISTRICT COURT OF CLEVELAND COUNTY
# STATE OF OKLAHOMA

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., as Administrative Agent on behalf of itself and other Lenders,<br><br>    *Plaintiff*,<br><br>v.<br><br>AVARA PHARMACEUTICAL TECHNOLOGIES, INC.<br><br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORIGINAL VERIFIED PETITION OF JPMORGAN CHASE BANK, N.A.**

Plaintiff JPMorgan Chase Bank, N.A., ("JPMorgan") as administrative agent on behalf of itself and the other Lenders (as defined below) (the "Administrative Agent"),[1] files this Original Petition against Defendant Avara Pharmaceutical Technologies, Inc. (the "Defendant"):

**PARTIES, JURISDICTION, AND VENUE**

1. The Administrative Agent is a national banking association.

2. The Defendant is a Delaware corporation with its principal place of business located at 3300 Marshall Avenue, Norman, Oklahoma 73072. The Defendant may be served with process through [its registered agent, [ ● ]]. The Defendant is a subsidiary of Avara Pharma Services Ltd. (the "Parent") and Avara Holdings Ltd. ("Holdings" and, together with the Parent and its subsidiaries, including the Defendant, "Avara"). The Parent and

---

[1] At certain times herein, as context requires, "Administrative Agent" refers to JPMorgan's role as administrative agent on behalf of the Lenders under the Credit Agreement (each as defined herein). For the avoidance of doubt, JPMorgan files this Original Petition as Administrative Agent on behalf of the Lenders under the Amended and Restated Credit Agreement (each as defined herein).

US-DOCS\133336718.6

Holdings are United Kingdom limited companies with corporate headquarters at 3300 Marshall Avenue, Norman, Oklahoma 73027.

3. This Court has jurisdiction over the party named and the claims asserted because all of the property at issue in this case is located in Cleveland County, Oklahoma.

4. Venue is proper in Cleveland County under 12 O.S. § 132 because the property interests that are the subjects of this action are located in Cleveland County. Venue likewise is proper in Cleveland County under 12 O.S. § 137 and 12 O.S. § 142.

## FACTUAL BACKGROUND

### A. The Defendant

5. Avara is a contract manufacturing organization that provides drug development and drug manufacturing services to pharmaceutical companies on a contract basis. The Defendant owns the land, improvements, and fixtures located at 3300 Marshall Avenue, Norman Oklahoma 73072, which serves as the corporate headquarters for Avara. In addition, that location also includes a production facility.

### B. The Credit Agreement

6. On or about May 25, 2018, certain Avara entities (including the Defendant) (collectively, the "Borrowers"), certain lenders (collectively, the "Lenders"), and JPMorgan as administrative agent for the Lenders, entered into the Credit Agreement (as amended, supplemented or otherwise modified from time to time prior to June 9, 2020, the "Credit Agreement") under which the Lenders agreed to provide certain loans to and extensions of credit on behalf of the Borrowers (collectively, the "Loans"). A true and correct copy of the Credit Agreement is attached as Exhibit [ ● ].

7. As a condition of the Lenders' obligations under the Credit Agreement and to secure, among other things, the indebtedness of the Borrowers and the payment and performance

of all obligations of the Borrowers to the Lenders, certain Borrowers (including the Defendant) granted, pursuant to the Pledge and Security Agreement (the "Pledge and Security Agreement"), dated May 25, 2018, a security interest to the Administrative Agent on behalf of the Lenders, all of each granting Borrowers' "right, title, and interest, whether [then] owned or [thereafter] acquired, in and to the Collateral (other than Excluded Equity Interests)" (each as defined in the Pledge and Security Agreement). *See* Pledge and Security Agreement Art. II. The relevant Borrowers (including the Defendant) also executed and delivered additional security agreements and related agreements and documents (collectively, together with the Pledge and Security Agreement, the "Security Agreements"). A list of the Security Agreements is attached as Exhibit [ ● ]. True and correct copies of the Security Agreements are attached as Exhibits [ ● ]-1 through [ ● ]-[ ● ].

8. The original maturity date under the Credit Agreement was May 25, 2020 (the "Original Maturity Date"). *See* Credit Agreement §§ 1.01, 2.10.

9. Prior to the Original Maturity Date, the Administrative Agent sent Avara no fewer than [four] notices that Events of Default had taken place under the Credit Agreement:

   (a) On February 14, 2019, the Administrative Agent provided notice that Events of Default occurred as a result of the Parent's failure to comply with its financial covenants in violation of Section 6.12 of the Credit Agreement and an administrator being appointed to administer Avara Avlon Pharma Services Ltd., under the Insolvency Act 1986 of the United Kingdom, in violation of Section 7.01(h) of the Credit Agreement. *See* February 14, 2019 Letter. A true and correct copy of the February 14, 2019 Letter is attached as Exhibit [ ● ].

   (b) On March 1, 2019, the Administrative Agent provided notice that an Event of Default occurred when a receiver was appointed for Avara Boucherville Pharmaceutical Services, Inc., in violation of Section 7.01(h) of the Credit Agreement. *See* March 1, 2019 Letter. A true and correct copy of the March 1, 2019 Letter is attached as Exhibit [ ● ].

  (c) On June 10, 2019, the Administrative Agent provided notice that Events of Default occurred as a result of the Parent's failure to comply with financial covenants under Section 6.12 of the Credit Agreement, Holdings' failure to provide financial statements in violation of Section 5.01 of the Credit Agreement, and Avara Liscate Pharmaceutical Services S.p.A.'s entry into a certain factoring facility not permitted under the Credit Agreement. *See* June 10, 2019 Letter. A true and correct copy of the June 10, 2019 Letter is attached as Exhibit [ ● ].

  (d) On September 26, 2019, the Administrative Agent provided notice that an Event of Default occurred as a result of Irish insolvency proceedings with respect to Avara Shannon Pharmaceutical Services Limited, a Borrower, in violation of Section 7.01(h) of the Credit Agreement. *See* September 26, 2019 Letter. A true and correct copy of the September 26, 2019 Letter is attached as Exhibit [ ● ].

10. Prior to the Original Maturity Date, it became clear that the Borrowers would be unable to pay back the Loans when they became due. Thus, on or about May 21, 2020, the Borrowers, the Lenders, and the Administrative Agent amended the Credit Agreement to extend the Original Maturity Date to June 9, 2020 (the "Second Maturity Date"), in order to give the parties more time to negotiate an amendment to the Credit Agreement.

### C. The Amended and Restated Loan Documents

11. On or about June 9, 2020, the Borrowers, the Lenders,[2] and the Administrative Agent entered into an Amendment and Restatement Agreement, whereby the Credit Agreement was amended and restated (as further amended, restated, supplemented or otherwise modified from time to time, the "Amended and Restated Credit Agreement"), under which the Lenders agreed to amend the terms of the Credit Agreement, increase their commitments to the Borrowers, and extend the maturity date to August 31, 2021 (the "Third Maturity Date"). A true and correct copy of the Amended and Restated Credit Agreement is attached as Exhibit [ ● ].

---

[2] As of the date of this filing, JPMorgan is the only Lender under the Amended and Restated Credit Agreement.

4

12. The Amended and Restated Credit Agreement appoints the Administrative Agent as agent for each Lender and authorizes "the Administrative Agent to take such actions on [each Lender's] behalf and to exercise such powers under [the Amended and Restated Credit Agreement] and other Loan Documents [as defined in the Amended and Restated Credit Agreement] as are delegated to the Administrative Agent under such agreements and to exercise such powers as are reasonably incidental thereto." Amended and Restated Credit Agreement, § 8.01(a).  The Amended and Restated Credit Agreement also authorizes the Administrative Agent to exercise all rights, powers and remedies that the Administrative Agent may have under [the] Loan Documents."[3]  *Id.*  Upon an Event of Default (as defined in the Amended and Restated Credit Agreement), the Administrative Agent "may with the consent of the Required Lenders [as defined in the Amended and Restated Credit Agreement] and shall at the request of the Required Lenders, by notice to [Holdings] . . . exercise on behalf of itself [and] the Lenders . . . all rights and remedies available to it [and] the Lenders . . . under the Loan Documents and applicable law." Amended and Restated Credit Agreement § 7.02(d).  The Administrative Agent received consent of the Required Lenders and provided notice to Holdings, thus is entitled and authorized to bring this suit against the Defendant and to seek all relief requested herein as to the Defendant.  *See* [Required Lender Consent]; [Notice to Holdings].  A true and correct copy of the Required Lenders' consent is attached as <u>Exhibit [ ● ]</u>.  A true and correct copy of the notice to Holdings is attached as <u>Exhibit [ ● ]</u>.

---

[3] As used herein, "<u>Loan Documents</u>" shall have the meaning ascribed to it in the Credit Agreement or the Amended and Restated Credit Agreement, as context requires.

5

13. As a condition of the Lenders' obligations under the Amended and Restated Credit Agreement and to secure, among other things, the indebtedness of the Borrowers and the payment and performance of all other obligations of the Borrowers to the Lenders, the Defendant executed and delivered the Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing (the "Mortgage"), and certain Borrowers (including the Defendant) executed additional security agreements and amendments, including an amendment to the Pledge and Security Agreement (as amended, and as may be further amended, restated, supplemented or modified from time to time, the "A&R Pledge and Security Agreement" and, together with the Security Agreements, the Mortgage, and all amendments, supplements, restatements or other modifications thereto, the "Security Agreements"). A list of the Security Agreements is attached as Exhibit [ ● ]. True and correct copies of the Security Agreements are attached as Exhibits [ ● ]-1 through [ ● ]-[ ● ]. A true and correct copy of the Mortgage is attached as Exhibit [ ● ].

14. The Mortgage grants the Administrative Agent a power of sale with respect to all of its Land, Improvements, Fixtures, Personalty, Deposit Accounts, Leases, Rents, and Property Agreements (each as defined in the Mortgage), including all assignable and mortgageable rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, and appurtenances appertaining to the foregoing, as well as all Tax Refunds, Proceeds, Insurance, and Condemnation Awards (each as defined in the Mortgage) (collectively, the "Mortgaged Property"). Mortgage §§ 1.1, 2. By virtue of the Mortgage, the Defendant thus granted the Administrative Agent, on behalf of the Lenders, an interest in and to the Mortgaged Property. The Mortgage also grants the Administrative Agent "first priority liens and security interests against the Mortgaged Property." Mortgage § 3.3.

15. The Mortgage was properly recorded on July 22, 2020 at Book 6088 Page 1099 in the real estate records of Cleveland County, Oklahoma.

16. The A&R Pledge and Security Agreement grants the Administrative Agent "a security interest in all of [the Defendant's] right, title, and interest, whether now owned or hereafter acquired, in and to," with limited exceptions, all assets, real and personal, and the proceeds and products thereof (the "UCC Collateral" and, together with the Mortgaged Property, the "Collateral"). *See* Pledge and Security Agreement Art. 2.

17. The A&R Pledge and Security Agreement authorized the Administrative Agent to file financing statements in the name of the Defendant to perfect all of the Administrative Agent's security interests in the UCC Collateral. A&R Pledge and Security Interest § 8.5.

18. The Administrative Agent has a properly perfected Security Interest in the Collateral by virtue of the UCC financing statements (the "UCC Financing Statements") filed and recorded with the Delaware Secretary of State on the dates indicated on Exhibit [ ● ]. True and correct copies of the UCC Financing Statements are attached as Exhibits [ ● ]-1 through [ ● ]-[ ● ]. The Administrative Agent also has properly perfected security interests in the Collateral consisting of deposit accounts because the Administrative Agent is the bank with which the deposit accounts are maintained, as listed on Exhibit [ ● ].

  **D. The Aborted Sale Process**

19. On or about March 17, 2021, Avara asked the Administrative Agent to prepare for a complete payoff of the Loans by April 9, 2021, in connection with an anticipated sale of substantially all of [Avara's] assets. The Administrative Agent accommodated the request and, among other things, arranged for mortgage releases to be executed, notarized, and delivered in escrow, and arranged to retrieve original collateral from the Administrative Agent's vault to be held pending closing of the payoff.

20. Despite this request, the proposed sale (and payoff) was repeatedly delayed by Avara and its controlling shareholder.

21. Confronted with the Third Maturity Date, and to accommodate the delay to the proposed sale, on or about August 31, 2021, the Borrowers, the Lenders, and the Administrative Agent entered into an amendment to the Credit Agreement whereby the maturity date was again extended by an additional three months to November 30, 2021 (the "<u>Final Maturity Date</u>"). *See* Amendment No. 2 to Amended and Restated Credit Agreement § 1(a). A true and correct copy of Amendment No. 2 to Amended and Restated Credit Agreement is attached as <u>Exhibit [ ● ]</u>.

22. On or about November 10, 2021, after not having heard from Avara for weeks, the Administrative Agent was informed that the controlling shareholder of Avara had decided to terminate the potential sale. *See* [ ● ].

   **E.   The Defaults**

23. In light of the looming Final Maturity Date, on or about November 29, 2021, the Administrative Agent provided Avara with a proposed short-term amendment that would have extended the maturity date yet again to March 31, 2022, but did not receive a response. *See* November 29, 2021 [Letter/Email]. A true and correct copy of the November 29, 2021 [Letter/Email] is attached as <u>Exhibit [ ● ]</u>.

24. The Loans matured on November 30, 2021 (i.e., the Final Maturity Date).

25. The Borrowers failed to repay the Loans on the Final Maturity Date.

26. On or about December 2, 2021, the Administrative Agent provided notice that Events of Default had occurred as a result of the Borrowers' failure to repay all principal, interest, fees and other amounts payable under the Credit Agreement and the other Loan Documents on the Final Maturity Date, in violation of Sections 7.01(a) and (b) of the Security

Agreement. *See* December 2, 2021 Letter. A true and correct copy of the December 2, 2021 Letter is attached as <u>Exhibit [ ● ]</u>.

27. The Administrative Agent received no communication from Avara until January 6, 2022, when Avara rejected the Administrative Agent's proposed terms and offered a counterproposal, requesting an 18-month maturity extension. *See* February 9, 2022 Letter. A true and correct copy of the February 9, 2022 Letter is attached as <u>Exhibit [ ● ]</u>.

28. On or about February 9, 2022, the Administrative Agent offered new terms for a proposed refinancing, which would extend the maturity date to May 31, 2023. *See* February 9, 2022 Letter.

29. After negotiation with Avara resulting in the terms in the February 9, 2022 Letter, the Administrative Agent prepared, at the request of the Company, the related amendment documentation that would have extended the maturity date to May 31, 2023. These documents were delivered to Avara on or around March 10, 2022. *See* March 10, 2022 Email. A true and correct copy of the March 10, 2022 Email is attached as <u>Exhibit [ ● ]</u>. The Administrative Agent never received a response to the proposed documentation for the extension amendment.

30. The Borrowers have failed to make payments when due under the Loan Documents and therefore are in default with no right to forbearance, and have been in payment default since the Final Maturity Date. *See* Credit Agreement §§ 7.01(a) and (b).

31. As of [ ● ], 2022, the Borrowers have failed to cure their defaults. As of [ ● ], 2022, the principal, interest, fees and other amounts payable under the Credit Agreement and the other Loan Documents due and payable is not less than $[ ● ]. Pursuant to Section 2.13(d) of the Credit Agreement, interest on the unpaid principal amount of the Loans has been

accruing at the default rate of 2% plus the rate applicable to ABR Loans (as defined in the Credit Agreement). *See* Credit Agreement § 2.13(d).

## COUNT I:
**(In Personam Judgment Against Defendant)**

32. JPMorgan incorporates by reference the allegations set forth above and below in this Original Petition.

33. The Credit Agreement is a valid, enforceable contract between the Defendant, the Lenders and JPMorgan (as a Lender and as Administrative Agent for the Lenders).

34. JPMorgan, as Administrative Agent under the Credit Agreement, is a proper party to bring suit on the Credit Agreement.

35. JPMorgan has performed its obligations under the Credit Agreement.

36. All conditions precedent to this suit under the Credit Agreement have occurred.

37. Defendant has failed to make all of the payment due under the Credit Agreement and has therefore breached the Credit Agreement and is in default thereunder.

38. As of [●], 2022, there is due and owing to JPMorgan under the Credit Agreement a collective amount for principal, interest, and fees of $[●], with interest and fees continuing to accrue. These amounts remain unpaid, and JPMorgan and the other Lenders have been damaged as a result of such nonpayment.

39. Pursuant to the Credit Agreement and applicable New York and Oklahoma law, JPMorgan is entitled to recover its attorney fees and costs.

40. WHEREFORE, JPMorgan demands relief upon its Count I against Defendant as follows:

    A.    For an *in personam* money judgment against Defendant in the collective amount for principal, interest and fees of $[●] plus accruing interest as provided under the Credit Agreement, as well as late fees;

    B.    For JPMorgan's attorneys fees and costs; and

C.     For all other relief to which JPMorgan may be entitled.

**COUNT II:**
**(Foreclosure of Mortgage)**

41.     JPMorgan incorporates by reference the allegations set forth above and below in this Original Petition.

42.     In consideration of the Loans, Defendant executed and delivered the Mortgage, granting JPMorgan an interest in the Mortgaged Property.

43.     JPMorgan holds a first and prior properly perfected lien in and to the Mortgaged Property.

44.     Borrower is in default under the Mortgage by virtue of, among other things, its defaults under the Credit Agreement, and as a result, JPMorgan is entitled to have the Mortgage foreclosed.

WHEREFORE, JPMorgan demands judgment on Count II in its favor and against Defendant as follows:

A.     Determining that the Mortgage creates a valid lien, and that JPMorgan's interest in and to the Mortgaged Property is first, prior, and superior to the interest of all other parties to this action;

B.     Ordering that the liens on the Mortgaged Property subject to the Mortgage be foreclosed and such property sold, with or without appraisement, as JPMorgan may elect at or before the time judgment is rendered, subject to unpaid taxes, if any, to satisfy the judgments herein, with the proceeds of said sale applied first to costs herein, then to JPMorgan's claims and judgment for the indebtedness owed under the Credit Agreement, with surplus, if any, paid into the Court to abide further order; and

C.     Determining that the right, title, and interest of all Defendants and any person or entity claiming by, through, or under said Defendants, or any of them, in and to the Mortgaged Property, are subject, junior, and inferior to the liens of the Mortgage, and that upon confirmation of the sale of the Mortgaged Property, all of the Defendants and all persons claiming by, through, or under them, or any of them, be forever barred, foreclosed, and enjoined from asserting or claiming any right, title, interest, estate, or equity of redemption in or to the Mortgaged Property, or any part thereof; and

D.     For such other and further relief to which JPMorgan may be entitled.

11

## COUNT III:
### (Foreclosure of Security Interests & Replevin)

45. JPMorgan incorporates by reference the allegations set forth above and below in this Original Petition.

46. In consideration of the Loans, Defendant executed and delivered the Security Agreements, granting JPMorgan a security interest in the UCC Collateral.

47. JPMorgan holds a first and prior properly perfected security interest in and to the UCC Collateral.

48. Due to the defaults described above, JPMorgan has all rights and remedies provided in the Security Agreements and under the Uniform Commercial Code, including taking possession of the UCC Collateral as provided by law.

49. WHEREFORE, JPMorgan demands relief upon Count III as follows:

    A.    That the Court award judgment in favor of JPMorgan and against Defendant declaring that JPMorgan holds a first, prior, perfected, and superior security interest in and to the UCC Collateral and that any right, title or interest of the other parties in and to the UCC Collateral is subject, junior, and inferior to the interest of JPMorgan;

    B.    That JPMorgan's security interest in the UCC Collateral be foreclosed, that the UCC Collateral be sold, and that the proceeds therefrom be applied to the payment of the costs of recovering, holding, preparing for sale, maintaining, insuring, and selling the UCC Collateral, and to the indebtedness owing indebtedness owed under the Credit Agreement, all as provided by law, and that the surplus of sale, if any, be paid into this Court for further order of the Court as to disposition thereof;

    C.    That this Court enter its Order approving in advance the method, manner, and conditions for sale of the UCC Collateral by JPMorgan, and determining that sale in such manner shall be deemed a commercially reasonable sale pursuant to the Uniform Commercial Code;

    D.    A final order of replevin with respect to all of the UCC Collateral; and

    E.    For such other and further relief as may be appropriate.

## COUNT IV:
### (Appointment of Receiver)

50. JPMorgan incorporates by reference the allegations set forth above and below in this Original Petition.

51. Under 12 O.S. § 1551, JPMorgan is entitled to have a receiver appointed to take charge of the Mortgaged Property and the UCC Collateral and the proceeds therefrom.

52. Under the Mortgage, Defendant consented to the appointment of a receiver upon a default. See Mortgage, § 10.

53. Because Defendant has defaulted under the Credit Agreement and Mortgage, JPMorgan is entitled to the immediate appointment of a receiver to take possession of, and to operate, manage, and control the Mortgaged Property and UCC Collateral.

54. Emergency appointment of a receiver should be immediately authorized because, upon information and belief, Defendant is legally insolvent. The Mortgaged Property and UCC Collateral are in danger of being diminished in value due to the inability of Defendant to pay its debts and operating expenses associated therewith.

55. By reason of the foregoing, it is apparent that (a) the Mortgaged Property and UCC Collateral are in danger of being lost, removed, or materially damaged, (b) the conditions of the Credit Agreement and Mortgage have not been performed, and (c) Defendant has consented to the appointment of a receiver in the Mortgage and related documents. There is an immediate need to preserve and protect the Mortgaged Property and UCC Collateral.

56. Accordingly, it is appropriate, and JPMorgan requests, that this Court appoint a receiver to take control of the Mortgaged Property and UCC Collateral; to secure, operate, safeguard, maintain, and sell the Mortgaged Property and UCC Collateral upon order of this Court; to

collect all proceeds therefrom; to promptly provide an accounting to the Court of the same; and generally to do all such acts as the Court may authorize.

57. JPMorgan has filed a separate Motion for Appointment of Receiver, all of which is incorporated herein by reference.

WHEREFORE, JPMorgan requests that this Court:

    A.    Appoint a receiver in this case to take control of the Mortgaged Property and UCC Collateral as requested herein;

    B.    Direct the receiver to take possession and charge of all of the Mortgaged Property and UCC Collateral and hold and manage the same under the orders and directions of this Court until further order of this Court; and

    C.    Award such further relief as the Court may find appropriate, including but not limited to attorney fees and costs of this action.